Mr. Justice Clayton
delivered the opinion of the court. .
The first question to be noticed in this case, arises on the two pleas in abatement of the defendant. The first is, that at the term of the court, at which the bill of'indictment was found, the court was not held in the court-house of Issaquena county. The second is, that Tallula, the place at which said court was holden, was not at that time the county seat of the said county. To each of these pleas a demurrer was filed.
The act of 1846 establishes Tallula as the seat of justice of Issaquena county. An act passed in January, 1848, authorizes the board of police of that county “ to remove the then location of the county seat of said county,” to some other place which they might select. Pamp. Acts, 220. The indictment in this case was found in April, 1848. Whether the board of police had in fact changed the location of the county seat before that time, is not shown by any testimony in the record. But the demurrer admits the fact, that the court was not holden at the county seat. In the case of Carpenter v. The State, 4 How. 168, it was decided, “ that it must appear from the record, that the court was holden at the proper place within the county.” The same is taken to be the established law in Kelly et al. v. The State, 3 S. & M. 524. The caption of the indictment in this case states, that the court was holden at Tallula. If it were not for the act of 1848, this state of facts would have existed, the caption of the indictment would have shown that the court was holden at the place appointed by law, and the demurrer to the plea, would have admitted the reverse. But this difficulty is obviated by the statute of 1848. It was error *193 in the court to sit at any other place than the one designated by law; and as it stands admitted upon the record, that it did so, the judgment upon the second plea in abatement should have been, that the indictment be quashed. Had issue been taken on the plea, the question would then have rested upon the fact.
Another error assigned is, the admission of two jurors upon the trial, who are alleged to have been incompetent, by reason of partiality. Although the case must be reversed on another point, yet, as this was elaborately discussed in the argument, we have thought it but proper to give our opinion upon it.
The objection to each of the jurors is very much the same. The one had formed his opinion from the rumors he had heard; the other from the arguments of counsel to which he had listened on the previous day, upon the trial of an accomplice of the prisoner for the same offence, and in which the witnesses were the same. Each stated he had formed and expressed an opinion ; one said his mind was clearly made up from rumor, each thought he could decide the case from testimony free from bias, but both thought it would require some testimony to remove the impression from their minds.
The great value of the trial by jury, consists in its fairness and impartiality. A right of trial by such a jury, is secured to every one who may be accused, by the constitution. It is the duty of the court to see that an impartial jury is empannelled, and that it is composed of men above all exceptions. Lewis v. The State, 9 S. & M. 119. In a civil case this court reversed a judgment, because one of the jury had expressed a strong opinion before the trial, but had denied it when questioned. The court remarked, “that the sanctity of the trial by jury, requires that the jury should be impartial and unbiassed.” Childress v. Ford, 10 S. & M. 30. The same reason applies with much greater force in a capital case.
This rule appears to be simple, yet it is often found to be difficult in its application. A man is impartial whose mind is not inclined either to the one side or the other. He is partial when it has taken a direction either in favor of or against a prisoner. That direction may be so slight, as to constitute no *194 impediment to the arriving at a just conclusion. It may be so strong as not to let the judgment have fair scope, and to close the avenue to the admission of a conviction opposed to the preconceived opinion. In the one case the juror would be competent, in the other not. It is the nature and character of the opinion, on which his competency must depend; not the source from which the opinion has been formed, nor its having been expressed or concealed. The belief of the juror, that he can do justice, can have but little influence in determining his competency. The presumption of law is against his competency, when a decided opinion, as to the guilt or innocence of the prisoner, has been formed.
The supreme court of Tennessee thus laid down the rule: “If it appear to .the judge, who under our system is the trier of the competency of the juror, that he has heard the circumstances of the case, and believing the statements he has heard to be true, has formed, or has formed and expressed an opinion, that is, has made up his mind as to the guilt or innocence of the prisoner, he ought to be rejected.” McGowan v. The State, 9 Yer. 193; Payne v. The State, 3 Humph. 376. The court manifestly felt the difficulty of laying down any rule, which would be free from ambiguity, but adopted this as the best definition of the principles, on which the question of impartiality must turn.
We cannot but be sensible of the same difficulty. If a juror were offered, who had already heard all the testimony, and made up his mind from it, beyond all doubt he would b&?ncompetent. On the other hand, if one were offered, wlio had formed only an hypothetical opinion from rumor, and who at the same time declared, that he could render an impartial verdict, it would be equally clear that he was competent. Between these two extremes, there is a wide space, in which it is perhaps impracticable to lay down any very definite general rule. The juror ought to be equal between the parties; if he be not, the verdict is liable to some degree of suspicion, and the purity of the administration of justice be thus called into question. Every case, however, must depend in some degree upon its own *195 peculiar facts. Circumstances may exist, which would render a departure from a rule necessary and unavoidable, which in a different state of case would be inflexibly adhered to. In some cases of very great notoriety, and of general concern, it might be impossible to find men in the vicinage, who had not formed some opinion of the matter. The recent Astor place riots and murders in New York, referred to in argument, are of this character. In such cases, some modification of the doctrine may be imperatively required. The rule must yield to the necessity, but only so far as the necessity demands. 1 Burr’s Trial, 419. Yet the more nearly we approach the point of entire freedom from preconceived opinion, and of complete equality between the parties, the more nearly we approach the perfection of the system of trial by jury.
In this case there was no necessity for any exception to the general rule, which requires the juror to be indifferent. We do not think these jurors came up to that standard. They both stated it would require testimony to remove the opinions they had formed. They did not, therefore, stand equal between the parties, for if they did, they would require testimony to convict, whereas, if their opinion were adverse to the prisoner, they would now require testimony to acquit. This reverses the benign rule of law, which presumes innocence until guilt be proven.
We shall not attempt to lay down a rule of universal application, upon a subject so hard to place within precise limits.
In consequence of the error in the decision upon the demurrers to the pleas in abatement, the judgment will be reversed, the indictment quashed, and the prisoner remanded to the county of Issaquena, for farther proceedings according to law.