## CHARLES B. LEE *v*. THE STATE OF MISSISSIPPI.

1. CRIMINAL LAW — INDICTMENT — FILING IT. — A recital in the record, that " on the 12th day of October, 1869, the grand jury of said county filed in said circuit court of said county aforesaid, an indictment in the words and figures following, to wit:" and a copy of the indictment following, on which the accused was tried (it not appearing that any objection was made in the court below, to the indictment as not having been "filed"), is sufficient to show that the indictment was duly presented and filed, as required by law.

2. GRAND JURY — IMPANELING IS CONCLUSIVE EVIDENCE OF COMPETENCY AND QUALIFICATION. — It is too late to call in question the competency and qualifications of the grand jury, by plea in abatement to the indictment. The impaneling is conclusive as to these.

3. JUROR IN CAPITAL CASE — HYPOTHETICAL OPINION FROM RUMOR, NO DISQUALIFICATION WHEN NO TESTIMONY IS REQUIRED TO REMOVE IT.— That a juror had formed and expressed an opinion in the case from rumor, but such as required no testimony to remove it, is not a disqualification in a capital case.

4. SPECIAL VENIRE — MODE OF DRAWING. — The fact that the names of persons returned as liable to serve as jurors were put by the clerk, in "jury box No. 2" instead of "jury box No. 1," both being empty, and that the special venire was drawn from "jury box No. 2," is no ground for quashing the *venire*, which in all other respects was drawn according to law, there being no pretense of fraud, unfairness, or injustice to the accused.

5. NEW TRIAL — EXPOSURE OF JURY TO IMPROPER INFLUENCES. — Where, on a motion for a new trial, because of the exposure of the jury to improper influences, the evidence excludes the idea of such exposure, and vindicates the jury from the imputation of improper conduct, the motion is properly denied.

6. CONFESSION — WHEN EVIDENCE AGAINST ACCUSED. — A confession of the accused not extorted by threats or fear or promises, but freely and voluntarily made to one having no authority over him, is proper testimony for the consideration of the jury.

ERROR to the circuit court of Coahoma county.  TRIMBLE, J.

*H. P. Reid*, for plaintiff in error,

Insisted that a new trial ought to be granted, because it does not appear that the indictment had been filed.  Laura v. The State, 26 Miss. 174; Haynes v. The State, 34 ib. 616.  The court erred in overruling the plea in abatement. Acts of 1866 and 1867, p. 233.  The court ought to have sustained the objection to Jere McCorby as a juror.  Burr's Trial, vol. I, p. 367; Heath v. Commonwealth, 1 Rob. 735;

U. S. v. Fries, 1 Wharton's St. Tr. 606 ; 3 Wharton's Am. Cr. Law, § 2981 ; also, Sam v. The State, 13 Smedes & Marsh. 189 ; Nelson v. The State, ib. 500.

The court ought to have excluded the evidence as to the confessions of the defendant.    Peter v. The State, 4 Smedes & Marsh. 31 ; Van Buren v. The State, 34 Miss. 512 ; Simon v. State, 37 ib. 288.    It was error to draw the jury from box No. 2, instead of from box No. 1, as required by Rev. Code, art. 135, p. 499.    The special venire was drawn from box No. 2, and the evidence of both the sheriff and the clerk goes to show that said box was filled with names taken from box No. 1.    This fact is alone enough to justify a new trial.

Again, a new trial ought to have been granted because of the improper influences to which the jury were exposed during the trial.    Boles v. The State, 13 Smedes & Marsh. 398. The evidence in this case presents a stronger case than the one cited.    McCann v. The State, 9 ib. 465 ; Nelms v. The State, 13 ib. 500.    See, also, 26 Miss. 83 ; 33 ib. 372 ; 36 ib. 121 ; Organ v. The State, 26 ib. 83 ; Haynes v. The State, 34 ib. 616.

*J. S. Morris*, Attorney-General.

1. The first error assigned is, that it does not appear that the indictment was ever filed ; but it is stated in the record that on October 12, 1869, the grand jury "filed in our said court the indictment," etc.    To this there was a plea in abatement that the grand jury was composed in part of colored men.    A demurrer to this was sustained, and the prisoner, being arraigned, pleaded not guilty.    This objection to the indictment, first raised here, comes too late.    But if this objection had been made in time, the authorities cited from, 26 Miss. and 34 ib., are inapplicable, and do not sustain counsel upon the point.    See Rev. Code (1857), art. 7, p. 573 ; Bouvier's Law Dict. tit. File.

2. The legal disqualification of men of color to sit on juries was abrogated by the 14th amendment.    This provision of the supreme law brings men of color within the

purview of the statute defining competent jurors. See art. 131, Rev. Code (1857), 499. The objection to the juror McCorby, because he had formed and expressed an opinion in the case, ought not to have been sustained. The juror did not say to what his opinion related, or what was the subject-matter of it, and that opinion was formed from mere rumor, and had already vanished from his mind.

4. The confession of the crime by the prisoner was not only voluntary, but was wholly unsolicited ; and in connection with the uncontradicted proof *aliunde* of the *corpus delicti*, and the dying declarations of deceased, could have warranted no other verdict. The jury having heard all the evidence, and being correctly and fully instructed upon the law applicable to the case, and having found a verdict of guilty, it ought not now to be disturbed.

5. The objection to the manner of drawing the special venire is in the least decree artificial, and cannot be tolerated, except by giving an undue and disproportionate importance to mere *forms*, at the expense of substance. The names of persons qualified were in box No. 2, and not in box No. 1. They might certainly, with more propriety, have been in box No. 1. The statute directs this for the convenience of the court and its officers. But is its non-observance in form, or its informal observance, as in this case, sufficient, without any pretense of fraud, to vitiate the trial ? The depositing of all the names in one of the several boxes *ipso facto* made it No. 1 in contemplation of law.

6. As to the exposure of the jury to improper influences, etc., the proof fails. The bailiff was absent "but for a moment," during all which time the sheriff himself, the clerk, the district attorney, and both the prisoner's counsel were part or all of them observers of all that occurred.

TARBELL, J.:

At the October term, 1869, of the Coahoma county circuit court, the grand jury of that county presented an indictment against the plaintiff in error, charging him with the

murder of John F. Riley, on the 7th day of June, in the same year. The proceedings and trial resulted in a verdict of guilty of manslaughter, from which the accused prosecuted a writ of error. The papers contain no assignment of errors, but the argument of counsel presents numerous objections to the record and proceedings. There was a plea in abatement to the indictment, alleging that there were colored men on the grand jury, to which there was a replication. A demurrer to the replication was overruled, when the accused pleaded not guilty. A motion for a new trial was denied. A special venire having been executed, the defendent moved to quash the same, because, 1st. The venire was drawn from box No. 2, instead of from box No. 1 ; 2d. Because the names were drawn from a list which had never been returned and filed in the clerk's office of Coahoma county ; 3d. Because colored men were drawn on said venire ; and 4th. Because the sheriff and clerk did not prepare the list in box No. 1 ; which motion was overruled.

The motion to set aside the verdict for a new trial was urged on the following grounds : 1st. The court erred in overruling objections to jurors because they were freedmen ; 2d. The court erred in overruling objections to a juror who said he had formed an opinion, but that it would not require testimony to remove it ; 3d. The court erred in overruling the motion to strike out the testimony relating to the confessions of the accused.

Not having been furnished with an assignment of errors, our examination of the record has been guided by the points made in his brief and argument by the counsel for plaintiff in error.

1. In regard to the objection that the indictment does not appear to have been filed, the record, page 1, recites, that "on the 12th day of October, 1869, the grand jury of said county filed in said circuit court of said county aforesaid, an indictment in the words and figures following," etc. Then follows a copy of the indictment upon which the

accused was tried.    It seems to us sufficiently clear that the indictment was duly presented and filed as required by law. Code, 614, art. 257.    This statute has several objects in view.    Among others, that the accused shall be tried upon the identical indictment found by the grand jury, and that it is found in the county where the offense is committed.    We think these facts satisfactorily established.

2. The exception to the composition of the grand jury not only came too late but was not in the proper form. Doubtless, because of the frequent escapes from punishment of those charged with crime, and of exceptions (for the most part technical) to the grand jury, the legislature enacted that "no objection shall be raised by plea or otherwise to the grand jury, but the impaneling of the grand jury shall be conclusive evidence of its competency and qualifications."    Code, 499, art. 131.    But parties interested "may challenge or except to the panel for fraud."    It is too late after indictment found to call in question its competency and qualifications by plea in abatement.    Ib.

3. The third point of counsel is disposed of by the foregoing.

4. The exception to the juror, McCorby, on account of bias, is not well taken.    Being examined on his *voir dire*, he said he "had formed and expressed an opinion in the case from rumor, but that it would not require testimony to remove it."

It is the right of the accused to be tried by a fair and impartial jury.    One who has forejudged the case, in whose mind is an opinion, clearly defined, is unfit to sit on the trial.    It is quite impossible to lay down a precise rule applicable to every case.    The accused has, in all cases, the privilege of a jury of the country.    His case may be so notorious that, perhaps, most persons qualified for the duty have heard of it, with more or less circumstantiality, and have upon their minds some impressions in regard to it. Such is the quality of the mind that every thing heard or said makes at the time an impression.    It may be tran-

sient and evanescent, or deep and abiding, according to the character of the communication. A narrative of an event of ordinary occurrence, according to the common and usual course of things, but little interests, and leaves hardly a trace upon the memory. The history of a great crime, secretly committed, is calculated to fix itself in the memory, and the judgment necessarily makes up an opinion, whether that opinion be fixed to the degree, that it may influence the mind in making up its verdict, or whether it is so slight and insubstantial that it offers no obstruction to the free play of the reason and judgment, and no hindrance to a fair and unbiased estimate of the testimony, are the questions involved in determining the fitness of the juror. There is great force and propriety in the observations of the court in the case of Sam v. The State, 13 Smedes & Marsh. 194. If, from what he has heard of the circumstances of the case, the juror has formed an opinion, he is incompetent. But if the opinion is from rumor and hypothetical, and would not interfere with the rendition of an impartial verdict, then, say the court, he is competent. Each case must depend somewhat on its own circumstances. The purpose is to embody a jury free from preconceived opinion. Although the juror may have heard of the case, and its circumstances, as a matter of common report and conversation ; yet, if he has no opinion as to the guilt or innocence of the accused, which would bias his mind, and he should declare that he felt free to decide the case according to the testimony, such an one is in our opinion a competent juror. Any other rule would be impracticable, especially, in those communities where daily newspapers are circulated, which are prompt to report all the more grave violations of law. We are satisfied that this juror was impartial and, therefore, qualified.

5. The confessions of the accused having been given in evidence without objection, counsel then moved to strike out so much of the testimony as relates to those confessions, but the motion was overruled, and this is now urged

for error. W. J. St. John, a witness, testified : "I recognize the prisoner ; he told me his name was Lee ; he came to my house about daylight ; said he wanted to give himself up ; thought I was a magistrate ; I told him I was not a magistrate and showed him where the magistrate's office was ; he said he wanted to give himself up as he had killed a man by the name of Riley ; he said he understood Riley was going to kill him ; I do not know how long this was after Riley was killed ; Lee said he was informed by Stacy that Riley would kill him ; Lee said Stacy had advised him to give himself up, and that he (Lee) would not be hurt." Mr. Mosely testified, that "Stacy advised Lee to come down and give himself up and make his confession, and it would go lighter with him. This was on the evening Riley was killed."

Sallie Moreland testified that she "heard Stacy advise Lee to give himself up and confess, he (Stacy) would come down next day with his (Lee's) witnesses and have him cleared. This was the day after Riley was killed." And this is all the testimony with reference to the confession. Arising, as this point does, on a motion to strike out testimony given without objection, the presumption is very strongly in favor of the correctness of the action of the court, but, in this instance, no such presumption is necessary, for we do not think this is a case within the rule which excludes confessions. Mr. Stacy was not in authority over Mr. Lee, who was not a prisoner. The confession was evidently the result of a deliberation, in which the accused was the equal of those with whom he advised as to the best course for him to pursue. The confession followed, clearly, in accordance with the convictions of his own mind, as the wisest thing for him to do. Our deduction from the evidence is, that the confession was not extorted by threats or fear, nor yet by promises, but that it was the result of a consultation, and the calculation of chances.

This is not a confession after an arrest, extorted by the fear or anticipated favor of persons in authority over him,

but it includes the policy of a surrender and a confession, his own judgment approving that course, voluntarily and freely acted upon while he was free to act for himself, hence not within the rule. 2 Russ. on Crimes, 838. But the testimony was ample, independent of the confession, and a verdict without it, even of a higher grade, would scarcely have been disturbed. Greenl. on Ev. 227; 20 Gratt. 730, and cases cited. Shooting an unarmed citizen in the back, while at his usual avocation, is little else than willful, malicious murder, "instigated of the devil," and with "malice aforethought." The accused ought to be thankful that he is afforded time and opportunity of repentance.

6, 7. The sixth and seventh points urged by counsel question the regularity of the *venire facias*, claiming that the writ should have been quashed, and that the irregularity mentioned was cause for a new trial, which the court erred in refusing. We have compared the facts set forth in the record with the provisions of the Code, pp. 499, 500, arts. 135 to 139, both inclusive, and find they were strictly complied with, except that the annual jury list was deposited by the clerk in box 2 instead of box 1. There were no names in box 1, and the drawing was from box 2. In all other respects the proceedings conformed to the Code. No fraud is alleged, nor is there an intimation of unfairness in any respect. The jury list embraced all those in the county qualified for that duty. The names, written on slips of paper, were all deposited in one box, and that was the box marked No. 2. Neither fraud, partiality or unfairness is intimated, and we do not see how, by any possibility, drawing from any particular box, whatever its mark, could in the remotest degree contribute to the selection of any certain person or persons on the jury. For all the purposes of the law, box 2 became box 1 for that occasion. The jury must have been the same in either case. Our conclusion is, that we cannot for this cause disturb the verdict.

8. Counsel charges that the jury were subjected to improper influences. Upon this point the following testi-

mony was taken upon the motion for a new trial : The sheriff testified, that, on the morning of the second day of the trial, he came to the court room door to look for the bailiff, who had charge of the jury ; the jurors were in the court room ; did not see the bailiff ; Gen. Chalmers coming in at the moment, said something about the bailiff having left his jury ; do not remember seeing any one in the court room but the jury, and no one spoke to or had any conversation with them while I was in the room ; saw Jack Lawler speak to Mr. Glenn after the jury was impaneled.

The clerk testified, that on coming to the court room, before court met, he found the jury there ; does not remember whether the bailiff was with the jury or not ; thinks Mr. Asa Cobb and his son, witnesses for the state, were in the room, but was not certain ; did not speak to the jury, and did not hear any one speak to them ; was busy at work, with his back to the jury.

The bailiff testified, that he left the jury to go to the post-office for letters ; was absent but a moment; there was no one in the room but the jury and clerk; the sheriff was at the door and staid there while I was gone ; the jury did not separate ; they were sitting around the stove ; returned to the court room ahead of Gen. Chalmers ; Mr. Cobb and his son were not in the room when he got there, but came in after he returned.

Jack Lawler testified, that Mr. Glenn asked him to take care of his horse, and he said he would, and that was all that passed between them.

H. P. Reid, counsel for accused, testified, that when he came into the court room the white jurors were in the corner, and the colored by the stove ; one William Hoskins was sitting near the negro portion, and Asa Cobb and his son were not far off; entered the room soon after Gen. Chalmers.

Gen. Chalmers, counsel for accused, testified, that he met the bailiff at the post-office, who said he came on business for the jury ; went into the court room about the same

time with the bailiff, he being a little first; saw the jury seated, the white men in one part of the room, and the negroes in the other; Mr. Cobb and his son were about ten feet from the negroes, separated by a railing.

The district attorney testified, that he entered the court room before General Chalmers, and was engaged in reading when the jury passed in a body to their box, and does not think the jury separated.

A member of the jury testified, that for perhaps five minutes the white members of the jury were sitting in the corner, and the negroes by the stove; does not know who was in the room; was not paying attention; remembers to have seen General Chalmers and Mr. Reid come in; thinks the white men where separated from the negroes when they came in. This was all the testimony on that point. We give it entire in order to present precisely the aspect of this allegation. It has not that importance with which counsel have sought to invest it. The jury went in advance of the opening of the court in the morning to their box in a body. Between the portion of the room where the jury were and the body of the room there was a railing. Within the bar were the clerk and the district attorney. Outside the bar were three persons; the most perfect quiet prevailed. All were seated. A part of the jury were seated in the corner, in the jury box, and a part were seated at the stove. Under these circumstances the bailiff was absent for a moment; the sheriff standing at the door. It is consistent with all the testimony, that, during the absence of the bailiff, there were in the room only the clerk and district attorney within the bar, and the sheriff at the door, Mr. Cobb and his son, and Mr. Hoskins coming in and taking seats at the moment of the return of the bailiff. We fail to see in the facts detailed any thing of an unusual character. Like circumstances are probably seen on every trial at every court in the state. In this instance, the jury cannot be said to have separated. It is a misuse of the term. There was no noise, moving about or confusion, but, on the contrary, the utmost

order and decorum, every person in the room being seated and silent. The request of one of the jurors to Mr. Lawler to take care of the horse of the juror, was evidently at the conclusion of the impaneling of the jury, and not on the occasion of the alleged separation. So far from a separation of the jury, or of disorders, and temptations, or the opportunity even for temptation, the reverse is established. Indeed, it is not pretended that there was any attempt to influence the jury improperly, but that it might have been done. Hardly, with the sheriff at the door, the clerk and district attorney within the bar, with only three other persons in the court room at most, but who probably came in after the bailiff, and were ten or more feet from the jury, outside the railing, with every one seated, jurors and others; with the most perfect stillness and quiet, improper influences were simply impossible. Even the opportunity was clearly negatived. We think the testimony disproves separation, disorder, improper influences, attempts to communicate with the jury, or to influence them, or the opportunity of doing either.

We have carefully examined the record in this case, and the authorities referred to, besides others. A review of the adjudications is not required, there being no new principle involved. It is only necessary to remark that the facts presented to us do not bring any of the points made by counsel within the rules of law applicable thereto, wherefore, the judgment is affirmed, and the sentence pronounced will be enforced from the date fixed by the circuit court.