ELVIN LOGAN v. THE STATE.

| 50 | 269 |
| c72 | 524 |
| 50 | 269 |
| 86 | 149 |

1. CRIMINAL LAW — IMPARTIAL JURY — SEC. 2, ACT OF APRIL 5, 1872.—
   Among the rights secured to one charged with a criminal offense, by sec.

7, art. 4, of the constitution is, "a speedy and public trial by an impartial jury," etc. Any act of the legislature, which should encroach upon the qualifications of jurors, in such wise, as to endanger their impartiality, would be an infringement of this constitutional privilege. *Quære.* Is sec. 2 of the act of April 5, 1872, constitutional?

2. SAME — SAME — EXTENT THEREOF. — The extent of the privilege is, that each member of the panel shall be indifferent and impartial; in that state of mind, unbiassed by a pre-opinion or prejudice, which would or might interfere with the just influence of the testimony on the mind.

3. SAME — SAME — RULE IN THIS STATE. — The rule in this state is, that if the mind of the juror is so far prejudiced as to require testimony to annul pre-opinion derived from any source or origin; or if the opinion has been engendered from personal knowledge, from hearing the witnesses, on a former trial, although the juror may disclaim that it would influence his verdict and claim that he was unbiassed, he would be an incompetent juror. But if the opinion is formed from rumor, and upon investigation, shall be shown not to be fixed so as to create a bias or prejudice which would require testimony to remove, such person is a competent juror.

4. IMPANELING A GRAND JURY — SPECIAL VENIRE — WAIVER THEREOF. — After a grand jury has been sworn and impaneled, exceptions cannot be taken to an individual member thereof. Code of 1871, § 729. When a party goes to trial, without service of the special venire, he will be taken to have waived it. Head v. The State, 44 Miss., 749; Durrah v. The State, ib., 795.

ERROR to the Circuit Court of Rankin County. Hon. W. M. HANCOCK, Judge.

The plaintiff in error was indicted for the murder of one Henry Young. On the first trial was convicted, and a new trial granted. The second trial was had in the October term of the circuit court of Rankin county; upon this trial prisoner was also convicted and sued out a writ of error to this court. The only point discussed in the opinion of the court was as to the qualification of one Maxey as a juror. This juror, upon his *voir dire*, was asked by the district attorney, "if he had formed or expressed any opinion as to the guilt or innocence of the prisoner." He answered, "that he had." Said juror was then asked, "if that opinion had been formed from hearing the evidence, talking to the witnesses, or

from common rumor." He answered, " by talking with the witnesses." The district attorney further asked, "whether his mind was so made up and prejudiced one way or the other, as to render him unable to decide the case according to the evidence adduced on the trial." He answered, " that he thought his mind would be governed by the evidence." Juror was further asked, " whether his mind was as free to act and do justice between the state and the prisoner, as if he had not heard the witnesses." He answered, " that his mind was as free to act as water without regard to the opinion formed." Whereupon the court decided that he was a competent juror. The prisoner's counsel proposed to ask the juror, " if it would not take evidence to remove the bias he had against the prisoner." Which question the court refused to be asked, refusing also any other interrogatories by prisoner's counsel.

The following are assigned as error :

1. The indictment was void, because it appears on the face of the record that there was no lawful grand jury of the circuit court at the time the indictment was found.

2. Because said grand jury was not lawfully impaneled.

3. Said indictment is void on its face, because it does not inform the defendant of the nature and cause of the offense charged against him. Nor does it conclude " contrary to the form of the statute," and is not a common law indictment.

4. It does not appear of record that said indictment was found by the assent of twelve grand jurors thereto.

5. No writ of special *venire facias* was issued. Nor is there any return thereon in the record.

6. The court erred in impaneling R. S. Maxey as a juror to try said cause.

7. The court erred in granting the second instruction for the state.

8. The court erred in refusing the third, fourth and fifth instructions for the defendant.

9. The court erred in overruling the motion for a new trial.

*H. R. Ware,* for plaintiff in error, contended:

1. That § 2 of the act approved 5th of April, 1872, must be construed as qualifying parties as jurors, who have formed an opinion upon common rumor merely; otherwise it would be in direct conflict with art. 1, secs. 7 of the state constitution, which guarantees "a speedy and public trial, by an *impartial* jury of the county where the offense was committed." Where an opinion has been formed from talking to witnesses, disqualifies one as a juror. 1st Burrs' Trial, 419; Nelms v. The State, 13 S. & M., 500; Noe v. The State, 4 How., 330; Sam v. The State, 13 S. & M., 189; Alfred v. The State, 37 Miss., 296; Burtine v. The State, 18 Georgia, 534; Rice v. The State, 7 Indiana, 332; State v. Sater, 8 Iowa, 420.

2. That the evidence was not sufficient to sustain the verdict, being circumstantial and conflicting, and the case a capital one. 1 Starkie Ev., 577; Algeri v. The State, 25 Miss., 589; 2 Phillips' Ev., 451, or 283; McCann v. The State, 13 S. & M., 497; Caleb v. The State, 39 Miss., 721; Cicely v. The State, 13 S. & M., 202.

*J. D. Freeman,* on the same side, insisted:

1. That there was no legal grand jury as shown upon the face of the record, and that there could be no waiver of this objection by going to trial as an essential part of the record was wanting. 1 Bishop on Crim. Prac., p. 125. And that the prisoner may take advantage of the defect notwithstanding the waiver. Newcomb v. The State, 37 Miss., 383; Thomas v. The State, 5 How., 312; McQuillen v. The State, 8 S. & M., 597.

2. The petit jury were not lawfully selected from any special venire, lawfully issued, executed or returned into court, as required by law.

3. The verdict of the jury is void, because it does not state whether the penalty shall be death or imprisonment for life, as required by § 5 of act of 1872. This act conferred upon juries, "in all cases heretofore deemed capital," the exclusive privilege of adjudging the penalty, thereby repealing § 2630 of the code of 1871.

4. The 2d charge given for the state is too broad, as it excludes the defendant from the right of self defense. The 3d, 4th and 5th instructions should have been given for defendant to have given him the benefit of a partial or full excuse for the killing, because of the adultery of the deceased with the wife of defendant.

*G. L. Potter*, on the same side, argued the case orally, and filed an elaborate brief, relying upon the same points made in the other briefs, and authorities there cited.

*G. E. Harris*, attorney general for the state, insisted:

1. That under the act of April 5, 1872, Maxey was a competent juror, and was such under the law as it existed prior to the passage of the act of April 5, 1872, and cited in support thereof, Ogle v. The State, 33 Miss., 383, and Alfred v. The State, 37 Miss., 296.

2. That the act of April 5, 1872, is not violative of the constitution of the United States, or of art. 1, sec. 7 of the state constitution.

3. That the evidence, though somewhat circumstantial was sufficient to sustain the verdict. Algheri v. The State, 25 Miss., 584; James v. The State; McCann v. The State, 13 S. & M., 471.

Simrall, J., delivered the opinion of the court.

Among the rights assured by sec. 7, art. 1 of the constitution, to persons subjected to a criminal prosecution, "is a speedy and public trial by an impartial jury of the county where the offense was committed."

An act of the legislature, therefore, which should direct a trial in secret, or which should encroach upon the qualifications of jurors in such wise as to weaken or endanger their impartiality, would be an infringement of this constitutinal privilege.

The extent of the privilege is, that each member of the panel shall be indifferent and impartial, in that state of mind, unbiased

by a preopinion or prejudice which would or might interfere with the just influence of the testimony on the mind.

It would not, therefore, be a matter of materialty from which source or by what influences the mind was wrought upon; if it was in that temper and disposition which biased or prejudiced it, the juror would not be impartial.

The privilege of the accused is, that impartiality shall characterize the panel. The mind is so constituted that every thing communicated through the medium of the senses and the association of ideas in reflection make an impression. These impressions vary in intensity and permanency as the mind was brought in closer or more remote contact with the scene or the narrative.

What is seen, or heard, or felt, is more vivid than a description or narrative by another. As the source of information is more remote from the immediate witnesses of transaction, the memory is less retentive, and the influence upon the mind less positive. The law avails of these experiences in determining upon the mental state of a juror.

If he was a witness of the transaction under investigation, necessarily some opinion must have been formed of the conduct of actors which either accuses or excuses them. If he has attended a former trial and heard the witnesses, necessarily an impression was made upon his mind. So if he has heard persons in whom he has confidence detail the circumstances, some bias naturally is created. Nor does it at all depend upon the integrity and moral honesty of the juror, as to the existence of the bias. Nor again, is it possible to know how much or how little it may contribute to the assent to the verdict.

The privilege is, an "impartial jury of the county." But it would not do to refine too much and fix the standard of qualification so high, as in many instances, to be unattainable. The telegraph and the newspaper have been so multplied, and as we know, are so eager to gather and spread "news," that the knowledge of crime is communicated much more extensively

than formerly, and that, too, among the most intelligent classes—the fittest material for the jury.

In many communities, especially the larger towns and cities, this is more especially the fact. To hold, therefore, that a juror who had received a vague, evanescent impression from a newspaper or rumor, but who did not imbibe such an impression as engendered an opinion or bias, who had a consciousness of freedom from prejudice, and of ability to form a verdict according to testimony, was incompetent, would be to press the point to an unreasonable length. The very question came into judgment in Lee's case, 45 Miss., 118, 119. There the juror "had formed an opinion from rumor, but said that it would not require testimony to remove it." It is very difficult by words to define accurately the "state" of the mind, so subtle are its operations. That juror had derived an impression or opinion from what he had heard floating as gossip or rumor, but it did not so fix itself upon the mind as to stand in the way of a fair investigation and an unbiased weighing and consideration of the testimony. Such was also the case of Sam v. The State, 13 S. & M., 194, quoted with approval in the former case.

Impartiallity is the right of the accused and the aim of the law. If the juror has made up a *decided* opinion, whether from personal knowledge, the statements of witnesses, or from *rumor*, he is disqualified. Neely's case 13 Ill., 685. For the disqualification depends more on the nature and strength of the opinion than upon its source or origin. Boon's case, 1 Kelly (Ga.), 631; Banger's case, 14 La. Ann., 461.

The deduction from the cases in this court is, that although a rule of universal application is hard to be defined, this much seems to rest upon authority.

1. If the mind of the juror is so far prejudiced as to require testimony to annul a preopinion, derived from whatever source or origin, the juror is incompetent.

2. If the opinion has been engendered from personal knowl-

edge from hearing the witnesses on a former trial, although the juror may disclaim that it would influence his verdict, and claim that he was unbiased and free to be governed by the testimony on the trial, such person is not indifferent.

3. If, however, the opinion is formed from rumor, and upon investigation, shall be shown not to be fixed, so as to create a bias or prejudice, which it requires testimony to remove or overcome, such person is a competent juror. Sam's case, 13 S. & M., 189 ; Alfred's case, 37 Miss. Rep., 296; Ogle's case, 33 Miss., 383 ; Lewis' case, 9 S. & M., 118 ; Nelm's case, 13 S. & M., 500 ; Cotton's case, 31 Miss., 509 ; King's case, 5 How., 734.

Let us test the fitness of R. S. Maxey, as a juror. On his *voir dire* examination, Maxey responded to a question put by the district attorney, that he had formed an opinion as to the guilt or innocence of the accused. He further answered that the opinion had been formed by talking with the witnesses. On further interrogation, he said, he thought he could decide the case according to the evidence adduced on the trial. The juror further stated that his mind was as free to act as water, without regard to the opinion formed. The counsel for the accused proposed to ask the juror if it would not take evidence to remove the bias he had against the prisoner, which question the court would not permit to be asked, and refused to permit any other interrogatories to be put by the defendant's counsel ; but decided that the juror was competent, and he was accordingly sworn.

The question propounded on the cross examination was relevant and pertinent; and was well calculated to elucidate the strength of the juror's opinion. If it was of such force as to require testimony to remove it, then upon all the authorities he was disqualified. But the authorities go further. If the opinion has been engendered by hearing a former trial, or conversing with witnesses, or from personal knowledge, then the juror is incompetent. It is not left with the juror to determine as to his qualifications. When the facts are elicited, it is a question of law to be

adjudged by the court.   It is the property of the mind to receive impressions when hearing from an eyewitness the details of an alleged crime.   Nor can it avoid forming an opinion as to the quality of the act, and of the action.   Most men would be slow to admit that they could not discard such opinions, and render a verdict according to the evidence put before them on the trial.   But experience has taught the danger of entrusting to such persons the issues of life or liberty ;  unconsciously to themselves, the preimpression or opinion may be a factor in making up the verdict.

Such was precisely the condition of the juror Maxey; he had formed an opinion from the testimony, or some of it, yet he was " free as water " " to act without regard to the opinion formed."  He had an "opinion," but such was his self confidence, he was " free " still to receive testimony and pronounce the truth.   But the law adjudges a juror to be biased, and not " free," who has formed an opinion from such a source, and so far doubts his moral ability to overcome its subtle influence that it pronounces such an one an incompetent juror.

The other assignments of error relating to the organization of the grand jury, the *venire facias*, and the jurisdiction of the court to try the defendant on the indictment, are all met and cured by §§ 729 and 2843, Code of 1871, and the expositions of them in Head's case, 44 Miss., 749, and Durrah's case, ib., 795.   The record is full on the point also of the finding of the indictment, and its return into court.   After the grand jury has been sworn and impaneled, exceptions which go to the drawing, summoning, or to individual members, come too late.   If the defendant goes to trial without being served with a copy of the special venire, the proper length of time, he will be taken to have waived it.

For the error in overruling the objection taken to Maxey, and admitting him a member of the jury, the judgment is reversed, and cause remanded for *venire facias de novo.*